## BLAND v. UNITED STATES.
### No. 392.

Circuit Court of Appeals, Second Circuit.
June 30, 1930.

Emily Marx, of New York City, for appellant.

Charles H. Tuttle, U. S. Atty., of New York City (Frank W. Ford, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

Appellant, on February 2, 1906, filed a declaration of her intention to become a citizen. May 21, 1929, she filed a petition for naturalization. After a hearing, on April 14, 1930, when the oath was being administered, in the customary phrase—"I hereby declare, on oath, that I absolutely and entirely renounce and abjure all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty, and particularly to * * * of whom I have heretofore been a subject (or citizen); that I will support and defend the Constitution and laws of the United States of America against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I take this obligation freely, without any mental reservation or purpose of evasion; So Help Me God. In acknowledgment whereof I have hereunto affixed my signature"—she demurred to the form, saying her religious convictions forbade her personally bearing arms. She was willing to take the oath in the form which she suggested, as follows:

"I hereby declare, on oath, that I absolutely and entirely renounce and abjure all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty, and particularly to * * * of whom I have heretofore been subject or citizen, that I do solemnly affirm I will support the Constitution of the United States and will as far as my conscience as a Christian will allow defend it against all enemies foreign and domestic; that I will bear true faith and allegiance to the same and that I take this obligation freely, without any mental reservation or purposes of evasion, so help me God."

After extensive examinations as to her religious convictions, and full freedom of expression as to them, she refused to unqualifiedly swear to defend the Constitution. The District Judge denied her application upon the authority of United States v. Schwimmer, 279 U. S. 644, 49 S. Ct. 448, 73 L. Ed. 889.

The appellant is the daughter of an Episcopalian minister. She is a nurse by profession, and served during the World War as such, nursing the sick and wounded in France. She thus exemplified her purpose to nurse the wounded in the event of war.

Counsel for the appellant says the question on this appeal is whether one applying for citizenship, whose religious convictions forbid her to bear arms, must nevertheless promise to bear arms in defense of the country. The oath she declined to take does not require her to make such a promise. The Naturalization Act of 1906 (U. S. Code, title 8, § 381 [8 USCA § 381]) requires that an alien, before being admitted to citizenship, shall "declare on oath in open court that he will support the Constitution of the United States; * * * that he will support and defend the Constitution and laws of the United States against all enemies, foreign and domestic, and bear true faith and allegiance to the same." The Naturalization Bureau requires an alien to "support and defend the Constitution of the United States against all enemies, foreign and domestic," and requires him to swear that he takes the obligation thus imposed "freely, without any mental reservation or purpose of evasion."

Neither the Constitution nor the laws of the United States prescribe any particular words or text of the oath of allegiance. Act of June 29, 1906, U. S. Code, title 8, § 409 (8 USCA § 409). The text of the oath typical in the petition and application is supplied by Rule 8, subd. (c) of the Naturalization Rules and Regulations promulgated by the Commissioner of Naturalization. See

Regulations of July 1, 1929, p. 81. This appellant says she would promise to defend the Constitution as far as her conscience as a Christian would allow. The government, by its Constitution or the acts of Congress, never exacted more from any applicant. Macintosh v. United States, 42 F.(2d) 845. Authoritative decisions have given full protection to the religious freedom granted by the First Amendment to the Constitution. Reynolds v. United States, 98 U. S. 145, 25 L. Ed. 244; Davis v. Beason, 133 U. S. 333, 10 S. Ct. 299, 33 L. Ed. 637.

Congress has the power to exact enforced military duty, at home and abroad, by citizens of the United States under the Constitution (article 1, § 8). Arver v. United States (Selective Draft Cases), 245 U. S. 366, 38 S. Ct. 159, 62 L. Ed. 349, L. R. A. 1918C, 361, Ann. Cas. 1918B, 856. It is especially imposed by statute upon male citizens and male aliens who have expressed their intention to become citizens. Act of 1898, U. S. Code, title 10, § 1 (10 USCA § 1). We have, as the necessities of wars required, drafted our male citizens to perform active military services. See Act of May 8, 1792, 1 Stat. 271; Act of April 18, 1814, 3 Stat. 134; Act of July 17, 1862, 12 Stat. 597; Act of March 3, 1863, 12 Stat. 731; Act of May 18, 1917, 40 Stat. 76; USCA tit. 50, § 226 note. But at no time was this duty to bear arms permitted to interfere with the principles of religious freedom or conviction. The government has consistently regarded the citizens' religious convictions in its laws. In each of the Draft Acts specified, provision exempting persons whose religious convictions forbade bearing arms was made. Persons of particular religious sects who have objected on such ground have been excused. Typical of this is the Federal Draft Act of May 18, 1917 (50 USCA § 226 note), which exempted them from combatant military service. The government's attitude in this respect was freely stated in the Selective Draft Cases, 245 U. S. 366, 38 S. Ct. 159, 62 L. Ed. 349, L. R. A. 1918C, 361, Ann. Cas. 1918B, 856, where the court assumed the government's position of recognizing the right of every citizen to choose his religious affiliation, restrictions and the free exercise of such religious convictions which would forbid participation in war. Thus, Congress has had due regard for the citizen, or the alien who becomes a citizen, whose religious convictions forbid, and who can conscientiously say he cannot bear arms. Usually, noncombatant obligations or duties were provided for such citizens.

This appellant testified to her willingness to serve in such a capacity. In her brief, counsel states, in explanation of her position, that appellant subscribed her name to the oath of allegiance formulated by the Naturalization Bureau six days before the decision by the Supreme Court in Schwimmer v. United States, and states that she understood the oath imposed upon her the duty to "obey the laws, even the Prohibition Law, and to do your utmost to improve conditions, industrially and socially and morally, to take an interest in civic affairs and to put the whole weight of your ideals into making the country even better than it is." She then states that, because of editorial writings throughout the country as an interpretation placed upon the Schwimmer decision, she concluded that an alien who did not promise to personally bear arms could not become a citizen of the United States. She felt it incumbent upon her to "draw the attention of the Judge who administered the Oath of Allegiance to the fact that my religious convictions would prevent my taking the usual oath to 'defend' the Constitution, without a mental reservation." But the appellant persists that she is able and willing to take an oath of allegiance which fulfills the requirements of the Naturalization Act. The oath she declined to take she erroneously interpreted. She pleads to substitute her own form. From this record, the views she expresses indicate a willingness to assume all the obligations and duties of citizenship as required by the Constitution and the laws of the country. To take the oath as phrased by the Naturalization Bureau would leave appellant free to be relieved of bearing arms in the event of war. It would not enforce arms bearing upon her or any other citizen in the event of future wars, and Congress unquestionably will, as it has in the past, make provision for citizens who conscientiously, irrespective of sect, want to be relieved because of religious convictions against combatant military service. And, if this appellant was thus informed, she, perhaps, would have been relieved of her fear of assuming an obligation which her oath did not impose upon her.

The Schwimmer Case, supra, is distinguishable from the one under consideration. The question of whether religious conviction would be an acceptable excuse from aliens refusing to agree to bear arms in defense of the United States did not arise. Counsel for the

government stated expressly that "refusal to perform military service on account of religious scruples was not involved in this case. The respondent has no religion." In that case, the applicant had a conscientious objection, possessed of pacifistic ideas with propagandist proclivities and of cosmic antinationalistic desires and purposes. The appellant may take the oath, and she will be fully protected if she will then make known her conscientious objections.

The order is reversed, and the cause remanded, with directions to proceed in accordance with this opinion.